## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

       Respondent-Plaintiff,

v.

Addison Thompson, Jr.,

       Petitioner-Defendant.

Criminal No. 17-69 (DWF/TNL)
Civil No. 18-3425 (DWF)

**MEMORANDUM
OPINION AND ORDER**

---

Addison Thompson, Jr., Petitioner-Defendant, *Pro Se*.

Thomas M. Hollenhorst, Assistant United States Attorney, United States Attorney's Office, counsel for the Government.

---

## INTRODUCTION

This matter is before the Court on Petitioner-Defendant Addison Thompson, Jr.'s ("Petitioner-Defendant") *pro se* motion under 28 U.S.C. § 2255 to vacate or set aside his sentence and conviction.  (Doc. No. 80.)  The United States of America (the "Government") opposes Petitioner-Defendant's motions.  (Doc. No. 96.)

Specifically, Petitioner-Defendant alleges that due to the ineffective assistance of his counsel during the pretrial, sentencing, and appeal phases of the proceedings in his criminal matter, his guilty plea was not knowing and voluntary and the sentence imposed by this Court was excessive.   Petitioner-Defendant requests that he be allowed to withdraw his guilty plea and that the Court vacate or set aside his sentence, then requests

that his case be remanded for resentencing. The Government opposes any order to disturb the judgment entered on the grounds that Petitioner-Defendant knowingly and voluntarily pled guilty, received adequate representation throughout the proceedings, and was sentenced in consideration of accurate information. The Government further argues that no evidentiary hearing is warranted because the record conclusively supports the judgment as entered.

For the reasons set forth below, the Court denies Petitioner-Defendant's motion.

## BACKGROUND

Petitioner-Defendant was charged by an indictment filed March 22, 2017 with nine counts of robbery and drug-related charges (Doc. No. 11 ("Indictment")), and pled not guilty as to all counts on March 29, 2017 (*see* Doc. No. 15). Petitioner-Defendant, through his counsel Frederic K. Bruno ("Attorney Bruno"), filed 17 pre-trial motions and related memoranda before notifying the Court that the parties had agreed to a resolution of the case and withdrawing Petitioner-Defendant's motions (Doc. Nos. 17-33; Doc. No. 39.)

Pursuant to a written plea agreement (Doc. No. 43 ("Plea Agreement")), on July 26, 2017, Petitioner-Defendant entered pleas of guilty to Counts 5 and 6 of the Indictment. Count 5 charged Petitioner-Defendant with Interference with Commerce by Robbery in violation of 18 U.S.C. §1951; Count 6 charged Intent to Distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). A Presentence

Investigation Report ("PSR") was ordered at the change of plea hearing (*see* Doc. No. 65 ("Plea Hearing") at 44), and each party filed a sentencing memorandum (Doc. Nos. 48, 51). The PSR included calculations under the United States Sentencing Guidelines (the "Guidelines") totaling an adjusted offense level of 34 and a criminal history category ("CHC") of VI, which resulted in an advisory guidelines range of 262 to 327 months' imprisonment. (Doc. No. 45 ("PSR") ¶ 122.) Petitioner-Defendant responded to the initial version of the PSR disclosed to counsel, noting several objections and proposed amendments, some of which were resolved through revisions to the report. (PSR at A.1.) The remaining five objections were noted in the PSR Addendum, and the substance of the objections was also addressed in Petitioner-Defendant's sentencing memorandum. (PSR at A.1-3; Doc. No. 48.)

Petitioner-Defendant was sentenced on November 27, 2017. At sentencing, this Court adopted the PSR with two changes: a two-level increase for the use of violence or credible threat of violence, and a finding that Petitioner-Defendant had a CHC of V. (Doc. No. 57 ("Statement of Reasons") Sec. I.) Additionally, the Court applied a three-level reduction for acceptance of responsibility that was anticipated but not factored into the PSR calculation, resulting in a total offense level of 29. (*See* PSR ¶¶ 65-66; Doc. No. 66 ("Sentencing Hearing") at 69.) The Court pronounced a sentence within the Guidelines range, sentencing Petitioner-Defendant to 148 months' imprisonment on each count, to run concurrently, to be followed by 3 years of supervised release (Sentencing

Hearing at 88, 90, 92).  Counts 1 through 4 and 7 through 9 of the Indictment were dismissed on the motion of the Government.  (Doc. No. 56.)

Petitioner-Defendant filed a notice of appeal on December 6, 2017.  (Doc. No. 58.) Petitioner-Defendant's appeal to the Eighth Circuit was filed the next day, as was Attorney Bruno's notice of appearance.  *United States v. Addison Thompson, Jr.*, Appeal No. 17-3670, Entry ID Nos.  4608422, 4608536 (8th Cir. Dec. 7, 2017).  The Government moved to dismiss, and the motion was granted on December 19, 2017. (Doc. No. 60.)  This Court granted Petitioner-Defendant's motion for an extension of time to file (Doc. Nos. 77, 78), and Petitioner-Defendant timely filed this § 2255 motion and supporting memorandum of law on December 17, 2018 (Doc. Nos. 80, 81), which the Government opposed (Doc. No. 96).

Before filing its response, the Government requested an order from this Court confirming that Petitioner-Defendant waived the attorney-client privilege with respect to his allegations of ineffective assistance of counsel.  (Doc. No. 89.)  This request was granted and Attorney Bruno was granted leave to file an affidavit in defense of the claims made by Petitioner-Defendant about his performance.  (Doc. No. 91.)  Attorney Bruno submitted an affidavit in response to Petitioner-Defendant's allegations.  (Doc. No. 96-1, ("Bruno Aff.").)  Petitioner-Defendant additionally filed a reply to the Government's response reiterating his original allegations and further claiming that his judgment was clouded by prescription medication at the time of his guilty plea, and that by responding

to Petitioner-Defendant's motion, Attorney Bruno improperly breached attorney-client privilege.  (Doc. No. 97 at 2.)

## I.    Plea Agreement

On July 26, 2017, Petitioner-Defendant and the Government entered into the Plea Agreement.  First, the parties agreed that Petitioner-Defendant would plead guilty to Counts 5 and 6 of the Indictment with the understanding that the Government would move to dismiss the remaining counts at sentencing.  (Plea Agreement ¶ 1.)  The parties agreed to the factual basis for the plea, and further, the parties agreed that if they were to proceed to trial, the Government would prove the facts supporting the plea beyond a reasonable doubt.  (*Id.* ¶ 2.)  Petitioner-Defendant acknowledged his right to file pretrial motions and "knowingly, willingly and voluntarily" agreed to withdraw the motions filed up to that point and to waive his right to file any additional pretrial motions.  (*Id.* ¶ 3.)

The Plea Agreement addressed the Guidelines and relevant statutes to be considered at sentencing, anticipating a CHC of V but noting that Petitioner-Defendant's actual CHC would be determined by the Court.  (*Id.* ¶ 8(d).)  The parties stated their respective positions as to the base offense level for each count and the applicable enhancements and reductions, reserving their rights to argue as to the application of increases for the use of a dangerous weapon and the taking of a controlled substance in connection to Count 5 and for the possession of a dangerous weapon and the use of violence in connection to Count 6.  (*Id.* at ¶¶ 8(a)-(b).)  The parties agreed, though, that

no other specific offense characteristics applied.  (*Id.*)  The Government's calculations

resulted in a Guidelines range of 168 to 210 months of imprisonment;

Petitioner-Defendant's calculations resulted in a range of 100 to 125 months.  (*Id.* ¶ 8(e)-

(f).)  The parties agreed that "[n]othing in this Plea Agreement should be construed to

limit the [p]arties from presenting any and all relevant evidence to the Court at

sentencing."  (*Id.* ¶ 8.)

The Plea Agreement noted the Government's belief that Petitioner-Defendant's

properly calculated criminal history score would place him in CHC V, but emphasized

that this was *not* a stipulation, and further, the parties agreed that the actual criminal

history "will be determined by the Court" and that any determination other than CHC V

"shall not be a basis for either party to withdraw from this Plea Agreement."  (*Id.* ¶ 8(d).)

Both parties also reserved their rights to move for departures from the applicable

Guidelines and to argue for a sentence outside them, as well as their rights to oppose such

motions made by the opposing party.  (*Id.* ¶ 8(i).)

The parties stated their understanding that while they were bound by their

stipulations with respect to Guidelines calculations, the Court was not.  (*Id.* ¶ 9.)  The

parties agreed that the Court "may make its own determination regarding the applicable

guideline factors and the applicable [CHC]," and "may also depart from the applicable

Guidelines."  (*Id.*)  Even if the Court determined that the applicable Guidelines

calculations or Petitioner-Defendant's CHC were different from those calculated by the

parties, they agreed that they could not withdraw from the Plea Agreement and that this Court's determinations would govern the sentence imposed. (*Id.*) Petitioner-Defendant waived his right to appeal his sentence if the Court imposed 210 or fewer months of imprisonment. (*Id.* ¶ 14.)

## II. Change of Plea Hearing

Petitioner-Defendant appeared at a change of plea hearing before this Court to enter his guilty plea on the same day he signed the Plea Agreement. (Doc. No. 65 ("Plea Hearing").) After swearing an oath to tell the truth, Petitioner-Defendant affirmed that he had had enough time to consult with his lawyer, Attorney Bruno. (Plea Hearing at 3.) Petitioner-Defendant also stated that he was satisfied with the services and representation provided by Attorney Bruno up to that point, saying "Yeah, I think Bruno is great." (*Id.* at 4.)

Petitioner-Defendant's own sworn statements confirmed that he understood all key aspects of the Plea Agreement. When asked by the Court, he answered that he signed the final page of the Plea Agreement voluntarily with no inducement other than what was contained in the writing itself. (*Id.* at 6.) Petitioner-Defendant stated he understood that with his plea, he would be sentenced to a maximum of twenty years in prison. (*Id.* at 8.) The Government asked that the Court clarify that Count 5 involved an offense in violation of the Hobbs Act, which would call for mandatory restitution upon conviction. (*Id.* at 12.) The Court confirmed this and explained the restitution issues in this case,

then asked Petitioner-Defendant if he had any questions. (*Id.* at 13.)

Petitioner-Defendant answered that he would do what he needed to do. (*Id.*) As this Court continued to review the Plea Agreement with him in detail, Petitioner-Defendant stated that he understood the differences between the parties' positions, and that each side had the right "to argue fully what they think the fair sentence is," but that "neither party can back out of the plea agreement." (*Id.* at 15-18.) At one point, Petitioner-Defendant expressed confusion about how the Guidelines offense level would factor into his ultimate sentence. (*Id.* at 21.) The Court explained to Petitioner-Defendant that there was no minimum sentence for the counts to which he was pleading guilty and that both parties were free to argue for a sentence below, within, or above the Guidelines range. (*Id.* at 21-22.) The Court went on to reiterate, however, that even if Petitioner-Defendant disagreed with the sentence imposed, "neither side can back out" of the Plea Agreement. (*Id.* at 23.) Petitioner-Defendant said that he understood. (*Id.*)

The Court reviewed the waiver provision of the Plea Agreement at length, and Petitioner-Defendant stated that he understood that he was giving up his right to appeal if he was sentenced to a term of imprisonment of 210 months or less. (*Id.* at 24.) Before Petitioner-Defendant entered his guilty plea, this Court asked him if there was any part or term of the Plea Agreement, whether previously mentioned or not, that he wanted to ask about. (*Id.* at 25.) Petitioner-Defendant answered, "No, Your Honor." (*Id.*) Counsel for the Government asked to "make it crystal clear" that Petitioner-Defendant understood

that by entering into the Plea Agreement, he was giving up his right to appeal "any sentence of a term of imprisonment of 210 months or less . . . regardless of what the guideline factors end up being." (*Id.* at 26-27.) Again, Petitioner-Defendant said he understood and had no questions about his waiver of appeal rights. (*Id.* at 27-28.)

Attorney Bruno then asked to make a clear record of Petitioner-Defendant's understanding about the collateral consequences of his plea. (*Id.* at 28.) Attorney Bruno reminded Petitioner-Defendant that the two of them met "a bunch of times" to discuss the enhancements sought by the Government and that Petitioner-Defendant had done research on his own at the law library. (*Id.*) Petitioner-Defendant said that he trusted Attorney Bruno. (*Id.*)

The Court went on to ask if Petitioner-Defendant understood the trial rights he was giving up by entering the Plea Agreement and pleading guilty, to which he answered in the affirmative. (*Id.* at 29-35.) Specifically, Petitioner-Defendant stated that he understood that the burden of proof would be on the Government at trial and that, to meet that burden, the Government would have to prove his guilt beyond a reasonable doubt. (*Id.* at 30-31.) The Court explained again that by waiving his rights to make pretrial motions and appeal his sentence, Petitioner-Defendant could not later "come back to me or a higher court and say, 'Judge, I know I pled guilty but I'm going to fight that now.'" (*Id.* at 32-33.) Again, Petitioner-Defendant said that he understood. (*Id.*) The Court explained that Petitioner-Defendant was waiving any future argument that he was in fact

guilty, but his constitutional rights were violated in the process leading up to his plea. (*Id.*)  Again, Petitioner-Defendant said that he understood.  (*Id.*)   Once more before entering his plea, this Court asked Petitioner-Defendant if he understood the constitutional rights he was waiving by going forward with his guilty plea, whether raised by the Court or not, and again this Court gave him an opportunity to ask any questions he had about any of his rights, as discussed, or anything else that had not been mentioned. (*Id.* at 33.)  Petitioner-Defendant answered that he understood and had no questions.  (*Id.*)

Petitioner-Defendant entered guilty pleas to both Counts 5 and 6, admitting to the factual basis for Counts 5 and 6 as well as the remaining counts to be dismissed.  (*Id.* at 35-44.)

### III.    Presentence Investigation Report

At the change of plea hearing, this Court ordered the United States Probation Department ("Probation") to prepare a PSR.  (*Id.* at 44.)  The PSR included a summary of the Plea Agreement, noting that the parties agreed to a base offense level of 20 but did not agree on which specific offense characteristics would apply.  (Doc. No. 45 ("PSR") ¶¶ 3, 25-26.)  The PSR further noted that the Plea Agreement anticipated a 3-level reduction in the offense level for acceptance of responsibility which was not yet applied in the calculations outlined.  (*Id.* at ¶¶ 16-17.)

The PSR discussed the application of the Guidelines, including how to factor in the quantity of controlled substances involved and the two two-level increases requested

by the Government for possession of a dangerous weapon and credible threats of violence during the commission of the offense conduct in connection with Count 6, resulting in an adjusted offense level of 34. (*Id.* ¶¶ 31-33.) Because the offense level for Count 6 was higher, this was the total offense level used to calculate the guidelines range. (*Id.* at ¶¶ 20, 39, 67.) Part B of the PSR detailed Petitioner-Defendant's criminal history, resulting in a subtotal of 11. (*Id.* at ¶ 81.) Two points were added to his score per the Guidelines because the offenses in question took place while Petitioner-Defendant was under a previously imposed criminal sentence, resulting in a total score of 13 which placed Petitioner-Defendant in CHC VI. (*Id.* at ¶¶ 82-83.) Following the Guidelines, the total offense level of 34 combined with a CHC of VI resulted in a range of 262 to 327 months' imprisonment. (*Id.* at ¶ 122.)

The PSR summarized Petitioner-Defendant's medical history, noting that at that time, he was not prescribed any medications. (*Id.* at ¶ 98.) As mentioned above, Petitioner-Defendant's objections and revisions were included in the addendum to the PSR. (*Id.* at A.1-4.)

## IV.    Petitioner-Defendant's Sentencing Memorandum

Petitioner-Defendant submitted, through counsel, a sentencing memorandum requesting a term of imprisonment within a range of 41 to 51 months or 37 to 46 months. (Doc. No. 48 ("Sentencing Mem.") at 25.) Petitioner-Defendant's position pleading based these requests on Guidelines calculations using either total offense levels of 18 for

Count 5 and 3 for Count 6 combined with a CHC of IV, or total offense levels of 18 for Count 5, 17 for Count 6, and a CHC of IV.  (Sentencing Mem. at 25.)

Petitioner-Defendant argued that the PSR improperly grouped offenses in its Guidelines calculations and stated that the offenses should be factored into the calculation in keeping with the Plea Agreement, or "the validity of [Petitioner-Defendant's] guilty plea will be called into question."  (*Id.* at 13-14.) Petitioner-Defendant also addressed the criminal history score as calculated in the PSR, taking issue with the inclusion of certain prior offenses and arguing for a CHC of IV rather than VI.  (*Id.* at 21-25.)  Petitioner-Defendant also requested that the Court grant a downward departure in consideration of other sentencing factors.  (*Id.* at 22.)

## V.     Sentencing Hearing

Petitioner-Defendant appeared with counsel for sentencing on November 27, 2017.  (Doc. No. 66 ("Sentencing Hearing").)  At the outset, the Court noted that both parties submitted memoranda and that there had been e-mail communications as well. (Sentencing Hearing at 3.)  The Court heard arguments from counsel for both parties before announcing the applicable Guidelines range.

The Government clarified that pursuant to the Plea Agreement and as reflected in the PSR, no adjustments were being applied under the grouping provisions of the Guidelines.  (*Id.* at 6.)  Attorney Bruno, arguing on behalf of Petitioner-Defendant, conceded that the Government was correct that, while the PSR's description was

12

confusing, the offense level did not include any grouping contrary to the Plea Agreement. (*Id.* at 10.)

The Government presented testimony from the Drug Enforcement Administration ("DEA") agent assigned to the case about the offense conduct in question and records of the prior convictions that were being contested by Petitioner-Defendant. (*Id.* at 13-30.) Attorney Bruno extensively cross-examined the witness. (*Id.* at 31-47.)

Petitioner-Defendant himself testified, affirming under oath that he met with his attorney "on quite a few occasions in jail" to consult over the PSR and his criminal record. (*Id.* at 49.) Petitioner-Defendant stated that he was no longer contesting one of the prior convictions disputed in his sentencing memorandum but maintained that two convictions were improperly counted in his criminal history. (*Id.* at 49-51.) When cross-examined by the Government, Petitioner-Defendant agreed that he admitted to the misconduct related to Counts 1 through 4 and 7 through 9 as part of the Plea Agreement, and again admitted to the conduct related to those counts. (*Id.* at 51-52.)

Following Petitioner-Defendant's testimony, the Government agreed that a CHC of V and a reduction for acceptance of responsibility would be appropriate for the purpose of calculating his sentencing range. (*Id.* at 53-54.) The Government calculated that a range of 168 to 210 months' imprisonment would result if the enhancements were applied as requested. (*Id.* at 54-59.)

Attorney Bruno renewed his arguments against the calculations related to the quantity of the controlled substances in question and the specific offense characteristics and again requested a sentence within the range suggested in Petitioner-Defendant's position pleading.  (*Id.* at 61-65.)

This Court explained its findings as to the applicable Guidelines.  (*Id.* at 67.)  The Court found that Petitioner-Defendant was properly categorized in CHC V as anticipated in the Plea Agreement, rather than VI as calculated in the PSR.  (*Id.*)  The Court declined to apply the 2-level enhancement for the specific threat on the ground that Petitioner-Defendant admitted to the force involved as an element of the robbery charge. (*Id.* at 68-69.)  The Court imposed the 2-level enhancement for the possession of a dangerous weapon.  (*Id.* at 69.)  Based upon these findings, the Court arrived at an adjusted offense level of 29 with CHC V, resulting in a Guidelines range of 140 to 175 months' imprisonment.  (*Id.* at 70.)

The Court allowed counsel for each side to argue their positions on the appropriate final sentence.  Attorney Bruno requested a departure sentence "in the range of 60 months" and further requested that Petitioner-Defendant receive credit for the time he had been held in custody up to that point.  (*Id.* at 73.)  The Government argued that nothing in this case warranted a downward departure and that a sentence in keeping with the Guidelines calculations, including a term of imprisonment of 168 to 175 months, would be appropriate.  (*Id.* at 77, 79-80.)

The Court explained its reasoning in consideration of the Guidelines and Petitioner-Defendant's individual situation, including his conduct and his personal history and mental health and chemical dependency issues, before pronouncing the sentence. (*Id.* at 80-88.)   In consideration of all relevant sentencing factors, the Court concluded that anything less than 148 months' imprisonment would promote disrespect for the law. (*Id.* at 88.)

## VI.    Statement of Reasons

The Court clearly set forth its analysis in the Statement of Reasons filed at the time of the Sentencing Judgment (Doc. No. 56).  The sentence imposed did not include a 2-level increase for the use of violence or a credible threat to use violence.  (Statement of Reasons Sec. I(B)(1).)  The Court found that Petitioner-Defendant's criminal history score should be 11, therefore placing him in CHC V.  (*Id.* Sec. I(B)(3).)   The Court determined Guidelines calculations calling for a term of imprisonment from 140 to 175 months of imprisonment.  (*Id.* at Sec. III.)

## VII.    Attorney Bruno's Account

Attorney Bruno was appointed to represent Petitioner-Defendant at the initial appearance in this case and represented him through the filing of his first appeal.  (Doc. No. 4; *United States v. Addison Thompson, Jr.*, Appeal No. 17-3670, Entry ID No. 4613204 (8th Cir. Dec. 21, 2017).)  As noted above, this Court granted Attorney Bruno leave to respond to Petitioner-Defendant's allegations about his performance as

counsel (Doc. No. 91), and Attorney Bruno filed an affidavit setting forth his account of relevant events (Doc. No. 96-1 ("Bruno Aff.")). Attorney Bruno denies Petitioner-Defendant's allegations regarding the assistance he provided in this matter, and offers additional information about the factors taken into account as he took, or declined to take, certain actions.

Attorney Bruno states that Petitioner-Defendant admitted to him that Petitioner-Defendant had taken part in each of the robberies specified in the Indictment. (Bruno Aff. ¶ 3.) Petitioner-Defendant had an accomplice for at least one of the armed robberies, but refused to cooperate with law enforcement in investigating this person despite Attorney Bruno's advice about the better outcome for Petitioner-Defendant that could result. (*Id.* ¶ 4.)

Attorney Bruno points out several issues that posed significant challenges for the defense were Petitioner-Defendant to exercise his right to a trial. The Government had ample evidence to prove its case, including "multiple eyewitnesses, fair and impartial identifications, an identification by [Petitioner-Defendant's] probation officer," and a trail from the last robbery that led to Petitioner-Defendant's vehicle. (*Id.* ¶ 11.) Attorney Bruno contends that even if his pretrial motion to suppress the lineup identification of his client had succeeded, the Government's identity evidence was "overwhelming," consisting of "multiple avenues of independent identification" such as GPS tracking of stolen drugs and DNA evidence linking Petitioner-Defendant to the crimes. (*Id.*)

Attorney Bruno avers that Petitioner-Defendant was "in full agreement" with the withdrawal of the pretrial motions filed on his behalf as part of the negotiated resolution. (*Id.* ¶ 10.)  Attorney Bruno denies ever telling Petitioner-Defendant that he would be sentenced to only 84 months of imprisonment.  (*Id.* ¶ 9.)  To the contrary, Attorney Bruno told Petitioner-Defendant that he would do his best to advocate for a significantly shorter sentence but "continually" made Petitioner-Defendant aware that he faced the sentencing range outlined in the PSR.  (*Id.*)

E-mail messages submitted by Petitioner-Defendant show that per his client's wishes, Attorney Bruno asked the Government to consider a plea agreement that would involve Petitioner-Defendant pleading guilty only to Count 5 of the Indictment.  (Doc. No. 83 Ex. B ("E-mails") at 2.)  The Government firmly rejected this idea, noting that guilty pleas to Counts 5 and 6 would not involve any mandatory minimum sentences, giving Petitioner-Defendant "plenty of latitude in arguing for a sentence far below the guideline range."  (E-mails at 1.)  Further, the Government noted that if convicted at trial, Petitioner-Defendant would be facing a sentencing range of at least 235 to 327 months' imprisonment, and that there were "other state and federal charges looming against [Petitioner-Defendant]."  (*Id.*; *see also* Bruno Aff. ¶ 7.)   Accepting the Government's plea offer would "wrap up all of [Petitioner-Defendant's] criminal exposure."  (*Id.*)

## VIII. Petitioner-Defendant's Appeal to the Eighth Circuit Court of Appeals

Attorney Bruno assisted in filing an appeal despite Petitioner-Defendant's waiver at his client's direction "as a matter of expedience" without Petitioner-Defendant having yet apprised Attorney Bruno of his reasons. (Doc. No. 83, Ex. A; *see also United States v. Addison Thompson, Jr.*, Appeal No. 17-3670, Entry ID No. 4610457 (8th Cir. Dec. 13, 2017). In response to the Government's motion to dismiss the appeal, Attorney Bruno agreed that Petitioner-Defendant had waived his right to appeal his sentence. (*Id.*) Petitioner-Defendant's appeal was dismissed on December 19, 2017. (Doc. No. 60.)

Petitioner-Defendant maintains that if not for the ineffective assistance provided by his counsel, Attorney Bruno, the case against him would have been dismissed, he would have chosen to exercise his right to a trial, or he would have received a more lenient sentence. Specifically, he alleges that he received ineffective assistance of counsel because Attorney Bruno (1) failed to investigate or properly prepare an adequate defense in the pretrial stage of proceedings; (2) failed to preserve issues for appeal and misinformed Petitioner-Defendant about his right to appeal; (3) failed to adequately negotiate and counsel Petitioner-Defendant about the Plea Agreement; and (4) failed in particular to move at the pretrial phase for suppression of identification evidence obtained in an unconstitutional manner. (Doc. No. 80 at 4-11.) Petitioner-Defendant also alleges that Attorney Bruno misadvised him of the Government's burden of proof at trial and that he could not raise his complaints in his appeal because Attorney Bruno "abandon[ed]"

him during those proceedings.  (*Id.*)  Due to the failures on Attorney Bruno's part,

Petitioner-Defendant claims, he could not knowingly and voluntarily enter into the Plea

Agreement and enter guilty pleas to Counts 5 and 6.  (*Id.*)  In later filings

Petitioner-Defendant elaborated further upon his claims, alleging that he was confused at

the time of his plea because he was under the influence of a prescription drug (Doc.

No. 97), and that Attorney Bruno told him on the day of his sentencing that only

84 months' imprisonment would be imposed (Doc. No. 82).

The Government argues that the record conclusively shows that Attorney Bruno

actively and competently litigated this case and further shows that Petitioner-Defendant's

participation throughout these proceedings was knowing and voluntary, therefore the Plea

Agreement is binding and Petitioner-Defendant is not entitled to any relief.

## DISCUSSION

## I.    Section 2255 Legal Standard

Title 28, United States Code, Section 2255, provides that a prisoner "may move

the court which imposed the sentence to vacate, set aside, or correct the sentence."  In

making such a motion, a § 2255 action requires a prisoner to show that he or she is

entitled to such extraordinary relief because:

> [T]he sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose such
> sentence, or that the sentence was in excess of the maximum authorized
> by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a).  If the court finds such a defect in sentencing, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  A § 2255 request for relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

The scope of the remedy provided under § 2255 "does not encompass all claimed errors in conviction and sentencing."  *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (internal quotations omitted)).  As elaborated below, Petitioner-Defendant's claims do not describe any fundamental constitutional, jurisdictional, or other severe defect in his sentence.

## II.    Ineffective Assistance of Counsel

Petitioner-Defendant claims four grounds for relief:  (1) ineffective assistance of counsel during the pretrial phase; (2) ineffective counsel during the appeal phase; (3) ineffective assistance of counsel in negotiating and entering into the Plea Agreement; and (4) ineffective counsel as to pretrial motions with respect to evidentiary issues in particular.  (Doc. No. 80.)  All four grounds can be addressed by the following.

Every criminal defendant has a constitutional right, guaranteed by the Sixth and Fourteenth Amendments, to effective counsel at trial and sentencing.  *Strickland v.*

*Washington*, 466 U.S. 668, 706 (1984); *Wooten v. Norris*, 578 F.3d 767, 781 (8th Cir. 2009). The Eighth Circuit follows the two-part *Strickland* test for review of claims of ineffective counsel; to succeed in his claim, Petitioner-Defendant must show that Attorney Bruno's performance was unreasonably deficient, and that Petitioner-Defendant "suffered such prejudice from the deficient performance there is a reasonable probability the result would have been different." *Roundtree v. United States*, 751 F.3d 923, 925 (8th Cir. 2014). To prevail on a claim for ineffective assistance of counsel under § 2255, a defendant must overcome a "heavy burden." *Apfel*, 97 F.3d at 1076. A court does not need to determine whether an attorney's performance was deficient before examining the issue of whether the defendant suffered any prejudice "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Nelson v. United States*, 909 F.3d 964, 970 (8th Cir. 2018).

Careful review of the record before this Court shows that the facts do not support Petitioner-Defendant's claims. As detailed above, Attorney Bruno vigorously litigated this case at the pretrial stage and at sentencing. Based upon the serious charges and the evidence Petitioner-Defendant faced were he to go trial, there is nothing in the record to indicate that Attorney Bruno's advice regarding the favorability of the Plea Agreement amounted to ineffective counsel.

Petitioner-Defendant's claims that he was unaware of the Government's burden of proof at trial or that Attorney Bruno led him to believe he would not be sentenced in

keeping with the Plea Agreement ring hollow in consideration of his own sworn statements. A defendant can show prejudice by showing a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," but "courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Dat v. United States*, 920 F.3d 1192, 1195 (8th Cir. 2019) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (internal quotations and punctuation omitted). The record before this Court directly contradicts Petitioner-Defendant's version of events and establishes that his allegations are incredible.

Crucially, Petitioner-Defendant has failed to show prejudice. He was notified accurately and completely of the terms of his Plea Agreement, including the applicable Guidelines calculations, at the time he entered his plea. The sentencing memorandum filed on his behalf and the arguments made by his counsel in court reflect the shared understanding of the parties. His sentence falls within the anticipated guidelines range and the record clearly shows that this Court considered his individual traits and circumstances as required by 18 U.S.C. § 3553(a). Petitioner-Defendant has failed to show that he is entitled to the relief requested.

## EVIDENTIARY HEARING

Based on the record before the Court, there is no reason for the Court to further explore any credibility issues with respect to Petitioner-Defendant's claims. A § 2255 motion can be dismissed without a hearing when: (1) defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Applying that standard to the Petitioner-Defendant's allegations and the record before the Court, the Court concludes that no evidentiary hearing is required in this case.

## CERTIFICATE OF APPEALABILITY

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B)(2006); Fed. R. App. P. 22(b)(1). A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

The Court has considered whether the issuance of a COA is appropriate. *See Tiedeman v. Benson*, 122 F.3d 518 (8th Cir. 1997). In that context, the Court concludes that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing *Lozado v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). The Petitioner-Defendant has not, therefore, made the "substantial

23

showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The Court finds that the record in this case entirely forecloses any notion that Petitioner-Defendant received ineffective assistance of counsel at any stage of the proceedings. Based upon the presentations and submissions of the parties, the Court having again carefully reviewed the record in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner-Defendant Addison Thompson, Jr.'s *pro se* Motion to Vacate, Set Aside or Vacate Sentence and Conviction Judgment Pursuant to 28 U.S.C. § 2255 (Doc. No. [80]) is respectfully **DENIED**.

2. No evidentiary hearing is required in this matter.

3. No Certificate of Appealability will be issued to Petitioner-Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 20, 2019                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge