## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-69 (DWF/TNL) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Addison Thompson, Jr., | |
| Defendant. | |

Addison Thompson, Jr., Defendant, *Pro Se*.

Thomas M. Hollenhorst, United States Attorney's Office, counsel for the Government.

## INTRODUCTION

This matter is before the Court on Defendant Addison Thompson, Jr.'s ("Thompson") *pro se* Motion for Compassionate Release in light of the COVID-19 pandemic.[1]  (Doc. Nos. 108, 111 (collectively, "Motion").)  The United States of America (the "Government") opposes Thompson's Motion.  (Doc. No. 114.)  For the reasons discussed below, the Court respectfully denies Thompson's Motion.[2]

---

[1]   Thompson filed an initial motion for compassionate release on April 19, 2021. (Doc. No. 108 ("First Motion")).  On June 18, 2021, he filed a second motion, incorporating and expanding on his First Motion.  (Doc. No. 111 ("Second Motion").) For the purposes of citation, the court references only Thompson's Second Motion.

[2]   The Court also received and considered Thompson's response to the Government's opposition.  (Doc. No. 115 ("Reply").)

## BACKGROUND

On July 26, 2017, Thompson pled guilty to one count of Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951, and one count of Possession with Intent to Distribute Oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(c) (Doc. Nos. 42, 43.)  On December 5, 2017, this Court sentenced him to 148 months' imprisonment on each count, to run concurrently, followed by a 3-year term of supervised release on each count, also to run currently.  (Doc. No. 56.)

Thompson is currently incarcerated at McCreary USP in Pine Knot, KY with an anticipated release date of June 23, 2027.  Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited July 27, 2021).  McCreary FCI reports 28 active COVID-19 case among its inmates and 1 among its staff, and 165 inmates and 94 staff who have recovered from the virus.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited July 27, 2021).  Sadly, one inmate at the facility died from COVID-19.  *Id.*  To date, the Bureau of Prisons ("BOP") has performed 900 tests for COVID-19 at McCreary USP with 186 of them positive for the virus.  *Id.*  Moreover, the BOP has fully inoculated 108 staff and 1076 inmates at the facility against COVID-19.[3]  *Id.*

Thompson, who is 32 years old, now moves for compassionate release on the grounds that he is at increased risk of severe infection from COVID-19 due to his

---

[3]     The inmate population at McCreary USP is 1,310.  Federal Bureau of Prisons, USP McCreary, *https://www.bop.gov/locations/institutions/mcr/* (last visited July 27, 2021.)

ethnicity and because he is obese,[4] suffers from asthma, has a history of smoking, and experiences sharp heart pains.[5]  (Second Motion at 2; Reply at 2-3; *see also* Medical Records.)  Thompson also asserts that he is at increased risk of contracting COVID-19 at McCreary USP because the facility is not taking precautions to mitigate its spread. (Reply at 1.)  Thompson argues that release is appropriate because "his criminal history is minor" in comparison to the criminal histories of those he is incarcerated with, he has had no disciplinary reports, he has been successfully rehabilitated, and the hardships imposed by COVID-19 constitute "hard time" which he should be credited for.  (Reply at 3-6.)

Thompson refused the COVID-19 Pfizer-BioNTech vaccine on March 18, 2021. (Medical Records at 15.)  He asserts that he has chosen not to be vaccinated against COVID-19 because the vaccine, is "useless" for people who are obese, may pose potential side effects including death, does not protect against variants of the virus, and because of his religious beliefs.  (Second Motion at 2; Reply at 3.)

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction."

---

[4]     Thompson is 66 inches tall and weighed 230 pounds as of August 10, 2020.  (*See* Doc. Nos. 45 ("PSR") at 2; 170 ("Medical Records") at 2.)  His corresponding body mass index is therefore 37.  *See* Centers for Disease Control and Prevention, Adult BMI Calculator,*https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html* (lasted visited July 27, 2021).  Thompson also asserts that he has a current body mass index of 37.  (Second Motion at 2.)

[5]     Thompson also asserts that other health issues, including scoliosis, back spasms, gum disease, and complications from a gunshot wound may be triggered by COVID-19 infection.  (Second Motion at 2.)

18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).[6]

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

---

[6] While the Statement refers only to motions filed by the Director of the BOP, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

The Court acknowledges that there is ongoing litigation surrounding this issue and that other courts have found that the Statement does not apply to motions initiated by a defendant. *See McCoy*, 981 F.3d 271 at 281; *United States v. Brooker,* 976 F.3d 228 at 234 (2d Cir. 2020); *United States v. Jones,* 980 F.3d 1098 at 1110-11 (6th Cir. Nov. 20, 2020); *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. Nov. 20, 2020). The Court also notes that the Eighth Circuit has not yet considered the issue. Here, even if the Court were to exercise greater discretion, the Court would still find that Thompson fails to present an extraordinary and compelling reason to warrant release.

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[7] *Id.*

The record reflects that Thompson requested compassionate release from the warden at McCreary USP sometime before his request was denied on June 18, 2021. (Doc. No. 111-2.) Thus, the Court finds that Thompson's Motion is ripe for review.

After a careful review of Thompson's Motion and other documentation, including his Medical Records, the Court finds that his circumstances are insufficiently extraordinary and compelling to meet the demanding standard for compassionate release.

The Court recognizes that obesity is a medical condition that increases Thompson's risk of severe illness from COVID-19.[8] *See* Centers for Disease Control and

---

[7] Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[8] The Court also recognizes that a history of smoking, asthma, and certain heart conditions may also increase Thompson's risk of severe illness from COVID-19 should he contract the virus. *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited July 27, 2021). The Centers for Disease Control and Prevention does not recognize Thompson's other conditions as risk factors for severe infection from COVID019. *See id.*

Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited July 27, 2021).  The Court also recognizes that sadly, COVID-19 has had a disproportionate impact on African Americans.  *See* Centers for Disease Control and Prevention, Health Equity Considerations and Racial Ethnic Minority Groups, *https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html* (last visited July 27, 2021).  Notwithstanding, the Court finds no indication that Thompson's obesity, alone or in combination with his race, any other medical condition, or the presence of COVID-19 at McCreary USP, has diminished or will diminish his ability to provide self-care while in prison.

The Court also finds that any risk that Thompson will be infected with COVID-19 is largely mitigated by the fact that the BOP is actively vaccinating inmates and staff, including over 80% of the inmates at McCreary USP.  "Extensive testing and monitoring have shown that these vaccines are safe and effective."[9]  Centers for Disease Control and Prevention Benefits of Getting a COVID-19 Vaccine,

---

Thompson's Medical Records do not reflect that he suffers from all of his asserted medical conditions, including asthma or a heart condition.  (*See* Medical Records.)  Even if he does suffer from conditions not reflected in his Medical Records, the Court still finds that release is not appropriate.  The record reflects that Thompson is receiving appropriate medical care; moreover, there is no indication that any medical condition, alone or in combination, has diminished or will diminish his ability to provide self-care.

[9]   According to the CDC, the Pfizer-BioNTech COVID vaccine that Thompson refused prevented 95% of infections in clinical trials.  *See* Centers for Disease Control and Prevention, Information about the Pfizer-BioNTech COVID-19 Vaccine, *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html* (last visited July 27, 2021).

*https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html* (last visited July 27, 2021).

While Thompson has chosen not to receive the vaccine, his own risk decreases as those around him become vaccinated.[10]  Federal Bureau of Prisons, <u>COVID-19: Coronavirus</u>, *https://www.bop.gov/coronavirus/* (last visited July 27, 2021).  The Court also notes that there are just 29 active cases of COVID-19 at McCreary FCI, and that the facility continues to employ measures to mitigate its spread. [11]  Federal Bureau of

---

[10]    The Court understands that Thompson has concerns related to the COVID-19 vaccines; however, the Court declines to grant release because he chooses not to receive one.  *See, e.g., United States v. Deleston*, Cr. No. 15-113, 2021 WL 1731779, *2 (S.D.N.Y. May 3, 2021) (collecting cases holding that refusing the vaccine weighs against an application for release).  Even if it is less effective for those who suffer from obesity, the vaccine still provides important protection.  Moreover, while the vaccine is imperfect insofar as some vaccinated individuals may still become infected with COVID-19, the vaccinated are far less likely to die from the virus.  *See* Centers for Disease Control and Prevention <u>Benefits of Getting a COVID-19 Vaccine,</u> *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html* (last visited July 27, 2021).  Thompson has a tool at his disposal to protect himself against COVID-19; while it is his decision whether to use it, he cannot rely on vulnerability to illness as grounds for compassionate release when he chooses not to protect himself against infection.

[11]    Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of COVID-19" and "to ensure the continued effective operation of the federal prison system."  *See* Federal Bureau of Prisons, <u>BOP COVID-19 Action Plan</u>, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited July 27, 2021).  Those steps include limiting visits and internal movement, increased hygiene measures, screening of both staff and inmates and virtual legal visits.  *See* Federal Bureau of Prisons, <u>BOP Modified Operations</u>, *https://www.bop.gov/coronavirus/covid19_status.jsp* (last visited July 27, 2021).  The BOP periodically updates its Plan and is currently in Phase Nine.  Federal Bureau of Prisons, <u>Coronavirus (COVID-19) Phase Nine Action Plan</u>, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf* (last visited July 27, 2021).

Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited July 27, 2021).  It is also promising that the BOP has successfully administered over 203,000 doses of the COVID-19 vaccine to all staff and inmates who wish to receive it.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited July 27, 2021).  Sadly, despite the vaccine rollout, some level of continued spread remains a possibility.  In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

Here, the Court finds that even if Thompson did present an extraordinary and compelling reason, release is not appropriate because the Court cannot conclude that he is not a danger to the safety of any other person or to the community and because the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against it.  Specifically, the Court cannot overlook Thompson's offense conduct and criminal history to now conclude that release is appropriate when he has served just a fraction of his sentence.[12]  (*See, e.g.*, PSR ¶¶ 6-10, 71-80.)  The Court recognizes the hardship that COVID-19 has imposed on inmates and credits Thompson for his commitment to rehabilitation;

---

The BOP is also exercising greater authority to designate inmates for home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited July 27, 2021).  Since March 2020, the BOP has transferred nearly 29,000 inmates to home confinement.  *Id.*

[12]   The Court recognizes that Thompson feels his own criminal history is less significant than those he is incarcerated with and that others with greater criminal histories have been released.  The Court observes that each motion for compassionate release is evaluated on a number of individual factors.  Here, the Court finds that the factors weigh against release.

however, the Court finds that nearly a 65% reduction in sentence would not reflect the seriousness of Thompson's conviction, promote respect for the law, or provide a just punishment.[13]  *See* 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons set forth above, the Court finds that Thompson fails to present an extraordinary and compelling reason to warrant compassionate release.  The Court also finds that release is not appropriate because it cannot conclude that he no longer poses a risk to the safety of the community and because the § 3553(a) factors weigh against it.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Addison Thompson, Jr.'s *pro se* Motion for Compassionate Release (Doc. Nos. [108], [111]) is respectfully **DENIED**.

Dated: July 28, 2021              s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge

---

[13]    Thompson has served approximately 55 months of his 148-month sentence. (Doc. No. 113-1.)